PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SIDDIQUE ABDULLAH HASAN, | ) | |
| | ) | CASE NO. 4:16CV02239 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WARDEN ED SHELDON, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 2 and 3] |

The within matter came on for Telephonic Hearing upon Plaintiff's Motion for Temporary Restraining Order ("motion") (ECF No. 3). For the reasons set forth below, Plaintiff's motion is denied.

**I.**

After notice to the parties, the Court held a Telephonic Hearing on the motion. The Court has been advised, having reviewed the record, including Plaintiff's pleadings and motion, and the applicable law. The Court has also considered the oral arguments of counsel.

**II.**

Plaintiff is a prisoner held at the Ohio State Penitentiary. ECF No. 1 ¶ 1. Plaintiff has spoken with the media regarding "his views on the inappropriateness of utilizing prison labor under conditions which he equates with slavery." *Id.* ¶ 6. He claims that on September 9, 2016, "inmates in institutions across the country and their supporters are intending to stage peaceful protests concerning the conditions under which inmates are obliged to work in prison facilities

across the United States." ECF No. 1 ¶ 5. Plaintiff intends to continue speaking with the media about the topic of prison labor. *Id.* ¶ 6.

On August 1, 2016, Defendant Said Ismail, a Contract Imam who provides religious services to Islamic inmates at the Penitentiary where Plaintiff is housed, wrote a conduct report against Plaintiff. *Id.* ¶¶ 3, 7. The report alleges that on July 22, 2016, Plaintiff "repeatedly suggested to the Imam that he should carry out a suicide mission at the Ohio State Penitentiary by wearing a bomb laden vest in to the Penitentiary." *Id.* ¶ 7. Plaintiff denies that he engaged in this conduct. *Id.* ¶ 8. The Rules Infraction Board ("RIB") held a hearing on the conduct report on August 18, 2016. *Id.* ¶ 10. The RIB found Plaintiff guilty of the conduct alleged, and suspended Plaintiff's phone and JPay email privileges for 30 days. *Id.* ¶¶ 10, 12.

Plaintiff filed this action under 42 U.S.C. § 1983, asserting that Defendants suspended his privileges in retaliation for Plaintiff exercising his First Amendment rights, and to prohibit him from speaking with the media during the protest on September 9, 2016. *Id.* ¶¶ 1, 13. Plaintiff concurrently filed the motion for temporary restraining order now under review. ECF No. 3 and 4. He asserts, "In order to prevent [Plaintiff] from [speaking to the media about the subject of prison labor], the defendants have trumped up a charge against him which they believe permits them to order a suspension of his right to communicate with the media or anyone else, except his attorney." ECF No. 4 at PageID #: 26. Plaintiff states that he is currently pursuing his administrative remedies, "but they will not be resolved until after the 9th which would deprive Plaintiff of any chance to have this Court remedy the violation of his rights." *Id.* at PageID #: 27.

**III.**

Four factors are important in determining whether issuance of a preliminary injunction is appropriate: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp.2d 682, 687 (N.D. Ohio 2002) (O'Malley, J.). The standard for issuance of a temporary restraining order is identical. *N.E. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The consideration given these factors is a flexible one, and the factors are not prerequisites to be met, but must be balanced. *Id.* at 1229. In balancing the four considerations applicable to temporary restraining order decisions, the Court holds that equitable relief is not appropriate.

Given the record created by RIB, it is unlikely that Plaintiff will succeed on the merits of his claim that Defendants suspended his telephone and JPay email privileges in an effort to retaliate against and frustrate Plaintiff's exercise of his First Amendment rights. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). While Plaintiff maintains his innocence of the charges, he does not dispute the adverse finding of the RIB. That finding alone justifies a penalty. Plaintiff's arguments that the suspension was retaliatory or conspiratorial are unpersuasive.

Moreover, the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires that

"prisoners must exhaust their administrative remedies before challenging prison conditions under § 1983 or any other Federal law." *Ramos v. Gansheimer*, No. 1:12CV132, 2013 WL 775353, at *5 (N.D. Ohio Feb. 26, 2013). Failure to exhaust is fatal. "Inmates at institutions maintained by the Ohio Department of Rehabilitation and Correction (ODRC) are bound to follow a three-step inmate grievance procedure set forth in Ohio Administrative Code § 5120-9-31(K). This procedure is available to all inmates, regardless of their disciplinary status at the institution." *Smith v. Marion*, No. 1:15CV195, 2016 WL 4051875, at * 2 (S.D. Ohio, July 27, 2016). Plaintiff concedes that he is still "pursuing his administrative remedies." ECF No. 4 at PageID #: 27; *see* Complaint, ECF No. 1 ¶ 13. Because Plaintiff has not exhausted his administrative remedies, he is not yet lawfully entitled to prosecute this § 1983 action.

Plaintiff has also failed to demonstrate that he will suffer irreparable harm if an injunction does not issue. To support his claim that the alleged misconduct was fabricated and the suspension was retaliatory, Plaintiff intones, "this potentially life-threatening exchange occurred a week and a half before the Imam bothered to report it to the prison officials." *See* Complaint, ECF No. 1 ¶ 11. "Moreover," Plaintiff asserts, "no explanation was given of the 2-1/2 week delay between when the report was received and the Rules Infraction Board met to consider it." *Id*. This delay is not facially unreasonable, and Plaintiff has not shown that the prison's internal investigative process would proceed more quickly under comparable circumstances. Furthermore, Plaintiff's filings offer no explanation for his own delay of nearly three weeks in filing the Complaint and motion for temporary restraining order. *See id.* ¶ 10 (The RIB issued its decision on August 18, 2016. The Complaint and motion were not filed until September 7, 2016,

two days before the nationwide inmate protest). Additionally, at the Hearing, defense counsel advised the Court that Plaintiff is also a plaintiff in a lawsuit concerning prisoners's First Amendment Rights in relation to the media, pending before a federal court in the Southern District of Ohio. Defense counsel, Mindy Worly, is also counsel in that case. That litigation provides Plaintiff with an additional avenue to vet the merits of his claim. For these reasons, irreparable injury in the absence of an injunction has not been shown.

It is not clear that issuance of the injunction would cause substantial harm to others. In fact, as defense counsel offered, there are other inmates at the facility—those inmates who have not had their privileges suspended for misconduct—who will participate in the protest and communicate with the media on the day of the protest.

Lastly, Defendants assert that issuance of the injunction would be against the public interest. The Court agrees. Respect for the prison's grievance process must be maintained unless or until circumstances strongly militate against preservation of that process. Plaintiff has not shown that such circumstances exist in this case. If there is even a specter of truth to the allegation that Plaintiff encouraged a suicide bombing at the prison as alleged in Defendant Ismail's conduct report, it is important for the prison to guard against it, regardless of whether the success of such a nefarious mission is probable or even possible. Plaintiff's interest in speaking to the media is significantly outweighed by the public's interests in maintaining safe, operational state correctional facilities. *See, e.g., Blair v. Loomis*, 1 F. Supp. 2d 769, 773 (N.D. Ohio 1998) (holding that the public's interest "in a safe and orderly prison system" outweighs an inmate's interest in spousal visitation rights when corrections officials denied plaintiff's wife visitation

privileges when she falsified information on her visitor application). Additionally, it appears (and Plaintiff's counsel conceded at the Hearing) that the success of the upcoming protest does not hinge on Plaintiff's participation. Plaintiff asserts that the protest will be nationwide, and defense counsel asserts that there are other inmates who plan to participate in the protest and currently have privileges that will permit them to communicate with the media. Therefore, the public will be informed on the topic of prison labor from the perspectives of inmates, with or without Plaintiff's participation.

Taken together, the factors weigh against imposing a temporary restraining order against Defendants.

**IV.**

Accordingly, Plaintiff's Motion for Temporary Restraining Order (ECF No. 3) is denied. For good cause shown, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 2) is granted.

IT IS SO ORDERED.

September 8, 2016
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge